CUNEO, GILBERT & LADUCA, LLP
Matthew E. Miller (BBO# 559353)
507 C Street NE
Washington, DC 20002
Telephone:  202-789-3960
Facsimile: 202-589-1813

MIRABELLA LAW
Erica Mirabella (BBO# 676750)
132 Boylston Street, 5th Floor
Boston, MA 02116
Telephone: 617-580-8270
Facsimile: 617-583-1905

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TODD M. GORNSTEIN on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TIMBERTECH and CPG INTERNATIONAL INC.,<br><br>Defendants. | CASE No. 1:14-cv-12409<br><br>**AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Todd M. Gornstein ("Plaintiff") files this amended class action complaint ("Class Action Complaint") on behalf of himself and all others similarly situated, by and through the undersigned attorneys, against TimberTech and CPG International Inc. (hereinafter "Defendants"), and states as follows:

## INTRODUCTION

1.    This is an action on behalf of Plaintiff and a class of all others similarly situated

persons or entities against Defendants, the manufacturers of defective decking, including

TimberTech's XLM line (hereinafter "TimberTech Decking," the "Decking," or "XLM"), which

is designed, marketed, and sold as an alternative to traditional wooden decks.  This Decking is

subject to major discoloration and failure, causing damage to homes, property, and other

buildings following installation.  As a result of Defendants' failure to properly design, develop,

test, manufacture, distribute, market, sell, instruct, and otherwise ensure that the TimberTech

Decking was made to an acceptable standard, Plaintiff's Decking is failing, causing him to suffer

damages.

2.        Among other issues, XLM is prone to substantial discoloration.  Despite its very

expensive price tag at or near the top of all TimberTech decking options, due to its supposed

durability and low maintenance, substantial problems exist.  The following pictures are but a few

examples of the poor performance of the TimberTech Decking after as little as a few months:



3.        TimberTech's motto is "Less work. More life."  Defendants warrant and advertise

that XLM requires low or no maintenance and that XLM is long lasting.

4.        Defendants, however, refuse to honor their purported 25-year warranty because

the discoloring failures are unilaterally deemed not a "defect."

5.        Defendants are responsible and liable for, among other things, the costs of

removing and replacing the Decking installed in the homes, offices, buildings and other

structures of Plaintiff and members of the proposed class, as well as other related consequential

damages that resulted from Defendants' defective Decking that has failed.

## PARTIES

6.     Plaintiff Todd M. Gornstein is a resident of Easton, Massachusetts.  In 2009 Mr. Gornstein had approximately 700 square feet of TimberTech XLM Mountain Cedar Decking installed with black RadianceRail (also manufactured by TimberTech).  Plaintiff's Decking was purchased from Chace Building Supply ("Chace"), a certified TimberTech dealer located at 129 Washinton St., Rt. 1, in Foxborough, Massachusetts.  Not long after installation Plaintiff's Decking began fading significantly and developed a milky white color.  Plaintiff tried a variety of techniques to mitigate the discoloration, including cleaning with soap and water and an approved deck cleaner, all to no avail.  Despite repeated efforts to receive a remedy from Defendants no adequate remedy has been offered.

7.     TimberTech is incorporated in Delaware and maintains its headquarters at 894 Prairie Avenue in Wilmington, Ohio.  The company does business in Massachusetts and throughout the United States.

8.     CPG International Inc. is a Scranton, Pennsylvania based company that bills itself on its website as "a manufacturer of market leading brands of highly engineered building materials for residential and commercial markets designed to replace, wood, metal and other traditional materials in a variety of building applications."  CPG International Inc. purchased TimberTech on or about August 2012.  Upon information and belief, CPG International Inc. has assumed all debts and liabilities of TimberTech.  CPG International Inc. does business in Massachusetts and throughout the United States.

## JURISDICTION AND VENUE

9.      As a result of regularly conducting business, testing, design, manufacturing, marketing, distributing, promoting and/or selling, either directly or indirectly through third parties or related entities, the Decks to purchasers throughout the Commonwealth of Massachusetts, Defendants obtained the benefits of the laws of Massachusetts and profited from Massachusetts commerce.

10.      This Court has jurisdiction over this action pursuant to 28 U.S.C § 1332(d)(2)(A), in that amount in controversy exceeds $5,000,000 and the proposed class includes persons who are citizens of States different from the States where Defendants are incorporated and have their principal place of business.

11.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because most of the events or omissions giving rise to Plaintiff's claims occurred in this District and Defendants are subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

12.      Upon information and belief Defendants are, and at all times relevant hereto were, engaged in the business of designing, developing, manufacturing, distributing, marketing, and selling decks and other deck-related materials in the Commonwealth of Massachusetts.

13.      Defendant manufactures, advertises, sells and distributes the Decking, and has since approximately 1996.

14.      The Decking was touted by the manufacturer and its sales representatives or agents as being easier to install, easier to maintain, and longer-lasting than wooden or other composite decks.  These attributes were used as a basis to charge a premium for the Decking compared with traditional wood or pressure treated wood decking.

15.     Defendants were negligent in the design, testing, and manufacture of the Decking for a number of reasons, including the use of polyvinyl chloride ("PVC") that was defective and did not, among other problems, retain its color.

16.     Defendants knew or should have known that the PVC it used for the Decking made it susceptible to premature failure through various processes leading to, among other things, substantial color deterioration.

17.     Defendants' design and materials choices, coupled with a lack of appropriate testing, have created a product that begins to fail on its first day of use, even if perfectly installed in its intended environment.

18.     Because of the defective design and manufacture, Defendants' Decking failed in its intended purpose.

19.     Because of the defective design and manufacture, Defendants' Decking is inherently defective and substantially certain to fail within the 25-year express warranty provided by Defendants and/or the useful life of the Decking.

20.     Defendants' warranty expressly states that:

> TimberTech Limited ("TimberTech") warrants to Purchaser that, for a period of twenty-five (25) years (Residential) & ten (10) years (Commercial) from the date of the original purchase, residential or commercial as the case may be, (the "Term"), under normal use and service conditions, that: (1) **the Decking Materials will be free from material defects in workmanship and materials, and will not check, split, splinter, rot or suffer structural damage from termites or fungal decay**; and (2) DrySpace will not peel, blister, pit, flake, crack or corrode as a result of manufacturing defects, or as a result of exposure to ocean air (salt spray).

(emphasis supplied).

21.     Persons or entities that own Decking have already experienced failures or own Decking which is in the process of failing prematurely and, thus, have suffered or are reasonably

certain to suffer actual injury well in advance of the warranted or expected life of their decks.

22.    Despite numerous customer complaints over a period of years, Defendants failed to implement any changes to their Decking, marketing, or warranty procedures to remedy these defects.

23.    The Internet is replete with examples of angry consumers who paid top dollar for TimberTech XLM and are furious about its performance.  Hundreds of posts can be found online in even a cursory search.  Below is a small sampling of complaints from disgruntled XLM purchasers found on renowned builder Bob Vila's website.  The complaints are reproduced below without alteration or correction of any grammatical errors:

a) <u>HATEXLM</u>

11:32PM | 05/30/13

Don't waste your time with Harvest Bronze XLM. We originally had Desert Bronze installed in June of 2010. By August of 2010 it had white chalking over the entire deck. After TT tried to get us to use their deck stain and we refused they finally agreed to replace the desert dream with Harvest Bronze promising that the HB product was improved and we wouldn't have the same white chalking problem. In less that a year, we had the same exact issue with the Harvest Bronze. We are exhausted with the entire process and don't want to go through the pain of replacing it again. At this point I do not feel that TT can provide a decent replacement product. I spent all this time convincing my husband that it was worth it to spend the extra dollars on a "maintenance free" deck vs. cedar decking. $21K later and I wish we would have done cedar!

b) <u>Stryker1952</u>

03:04AM | 10/08/12

My TimberTech was discolored from the get go. It arrived from the lumber yard where I purchased it from with this dark brown stain on it. I purchased the Twin Finish in grey, but some of the boards after taking off the shrink wrap were stained with some kind of brown material. Even the shrink wrap was coated with this brown material. It's as if the boards are weeping the stain. I tried to wash it off and some of the stain came out but most stayed. Boy I'm a sucker. I assumed this product had gone through at least a couple of years of testing. You would think AT LEAST the product wouldn't ooze any compounds that make up it's structure or its coloration. You look at the ends of some of these boards and you can see some kind of brown gunk collecting on the end. After laying down what wasn't stained on a 16x16 foot deck, the rest of the product seems to be reacting with UV radiation and they too are starting to discolor. I find it a bit unbelievable that they knew nothing about this defect when the product comes off the run stained or is showing signs of stains even before the boards leave the factory. I guess I don't want replacement product and I now want good old fashion cedar 2x6's. Heck I'll take PT 2x6's. Boy what a nightmare. I wouldn't recomend this product to anyone. This reminds me of the big defect in LP siding. Is this product made in the USA or China?

c) <u>Nonarosie</u>

12:38PM | 10/04/12

Wondering if anyone was reinbursed for the full labor cost. So far they will only reinburse me about half the cost. I strongly feel it is their faulty product and I shouldn't have to pay anything. . Just wondering if anyone can give me some advise before I contact a lawyer.

d) <u>Imcrushed</u>

12:54PM | 08/19/11

I am experiencing the same issue with TimberTech xlm desert bronze. My project (I'm Folsom near Sacramento CA)was completed in April of 2010 and starting in about 8-9 months I saw some graying and became concerned. By mid spring with the warmer weather a rapid progression to black occurred which in some areas is now complete. I have a large wrap around front porch that has both frost and extensive(80%)blackening in some areas. I also have a back porch that has some frost and blackening on the ends of the boards. The areas have 2 things in common. One, they receive the most moisture during the rainy season and 2) they receive the most sunlight. These decks were a $25,000 project.I waited years to have replaced as I saved the money. Researched decking extensively interviewing both contractors and the supplier. The XLM was a newer product and the distributer indicated the xlm would be more impervious to scratches. The feed back regarding TimberTech in general and on line product comparisons were favorable. Despite the higher cost, I chose TimberTech in an effort to achieve the lowest maintenance probability and a higher performance product. Clearly, the XLM is a huge problem at this point. I will continue to research and wait for a response from TimberTech. I am most concerned about next steps- how does one "fix" for fear the product will just do the same thing again?! For now it remains a very disappointing eyesore! I do not see a class action filing as of this date

e) <u>ronr</u>

07:20PM | 10/19/11

Had TT Harvest Bronze installed in July, 2011. Immediately after washing off the deck after the contractors were finished, we noticed irregular blotches and spots that looked

like diluted milk. We tried washing them off again, but no go. Contacted TT to inform them of the findings. They recommended using Krud Kutter cleaner. So, I pick this up at Home Depot and tried cleaning the blotches which were noticeable on about 50% of the boards. At first, it appear to have removed them, but after a day or two and rain, they were still there. All it did was cover them up. If the deck is wet, they are not noticeable. Reported back to TT with my findings. They then sent out someone from the supply house to apply a profesional heat gun to the areas, Claiming this works almost all the time. No change after 45-60 seconds of heat. Filed a warranty claim. Next, I sent TT a couple of scrap pieces of the decking that had a small area of the same defects for their inspection. They claim the Krud Kutter removed the spots and they didn't return after leaving the boards outside for a week. Now, they are recommending that I pressure wash, use Deck Max or SoSafe graffiti remover as possible remedies to my problem. I will not accept using deck treatments or chemicals to "cover up" the defects that will still be there after ther product wears off. Also, I should not have to pressure wash a brand new deck that was installed 2 months ago. I am still trying to determine if the product I purchased is really Harvest Bronze or is it Desert Bronze. There are no markings whatsoever on the boards. Waiting for a TT rep to come out to my home to inspect. Now the blotches are covering about 80% of the decking. I also believe I may have received a defective product.



f) <u>Rocketscientist</u>

05:59AM | 02/24/10

Well my claim with TimberTech was settled : they only reimbursed me for the decking material, at the deck contractors original purchase price. TimberTech would not pay for the labor to remove and replace the decking. I made my decision, but I sure am ****ed-off at TimberTech...a $27,000 deck that lasted less than one year.....Makes me angry everytime I look at my deck. It cracks me up how TimberTech claims that "Years of research and development went into this "Extreme Low Maintenance" decking material. If TimberTech had any integrity, they should have paid for the labor to redo the decking. As a side note, my prior home had an all-plastic deck, made from recycled plastic milk jugs, manufactured by some no-name company. That deck had no noticable fading after 9 years in direct South facing sun. Don't always think that the big players in an industry "must know what they are doing" !!

**Inadequate Testing of TimberTech XLM Decking**

24.    Defendants did not properly test the XLM Decking in their anticipated environments before selling the Decking to the public.

25.    Defendants conducted inadequate testing on the XLM Decking and failed to test for things that they knew or should have known would lead to premature failure of the Decking.

26.    Defendants failed to investigate or test whether well-known and expected environmental conditions would, among other things, lead to substantial premature discoloration in the Decking.

**False Advertising of TimberTech XLM Decking**

27.    Defendants falsely marketed or advertised that the XLM Decking was reliable,

despite failing to adequately test and determine the reliability of their product when used in real world environmental conditions. Defendants held out their XLM Decking product as having minimal maintenance requirements and excellent reliability and charged a premium price compared to alternative decking materials.

28.    Among other false and inaccurate representations regarding its XLM Decking product, Defendants falsely advertised and represented that the XLM decking was "designed to provide years of low-maintenance use and enjoyment."  Defendants inaccurately stated that TimberTech decking would be "dependable and attractive for years…" and would provide "years of outdoor living pleasure."

29.    Defendants and their authorized agents and distributors made each of the above described assertions, statements, representations and warranties with the intent and purpose of inducing suppliers, builders, and consumers to purchase and install the XLM Decking in or on properties in the Commonwealth of Massachusetts and elsewhere.

30.    Defendants also made numerous material omissions in its literature and uniformly withheld important information relating to the design, reliability and performance of the XLM Decking.

31.    Had Defendants not withheld and omitted important information about the design, reliability and performance of XLM Decking, Plaintiff and the members of the Class would not have purchased the products and/or installed them in their properties.

32.    As referenced above, Plaintiff's Decking was purchased and installed in Spring of 2009.  Within just a short period of time from installation the discoloration began.  Plaintiff captured pictures of newly-installed boards on his deck that illustrate the defective nature of the Decking. The picture depicts new replacement boards of XLM Mountain Cedar Decking just

after installation on Plaintiff's deck.



The following pictures were taken recently and depict Plaintiff's Decking with the discoloration

referenced herein.



33.    By way of additional background, Plaintiff's deck was installed in Spring 2009 by a professional installer associated with Chace.  The cost of the deck neared $20,000.  After the Decking began to fade, Plaintiff took various actions to attempt to mitigate the discoloration defect including the use of soap and water and an approved deck treatment product.  During this time period Plaintiff had repeated communications with Defendants by phone and computer. Despite promises to inspect Plaintiff's deck and make the situation right, Defendants failed to do so.

## CLASS ACTION ALLEGATIONS

34.    Plaintiff seeks to bring this case as a class action, pursuant to Rule 23 of the Federal Rules of Procedure. The proposed class (the "National Class") is defined as follows:

> All persons and entities that own a commercial or residential structure located within the United States that is constructed with XLM Decking installed on or after January 1, 1996, as well as any individual or entity that paid for or performed repairs of damage caused by the failure of the XLM Decking.  In addition, the proposed class includes, without limitation, all such persons or entities who were denied or partially denied warranty coverage for failure of the XLM Decking based on a claim that discoloration was not covered by the warranty or that other alleged warranty limitations applied.

Additionally, or alternatively, Plaintiff proposes a class or subclass (the "Massachusetts Subclass") defined as follows:

> All persons and entities that own a commercial or residential

structure located within Massachusetts that is constructed with XLM Decking installed on or after January 1, 1996,, as well as any individual or entity that paid for or performed repairs of damage caused by the failure of XLM Decking.  In addition, the proposed class includes, without limitation, all such persons or entities who were denied or partially denied warranty coverage for failure of the XLM Decking based on a claim that discoloration was not covered by the warranty or that other alleged warranty limitations applied.

Collectively the National Class and the Massachusetts Subclass are referred to herein as the "Class."  Expressly excluded from the National Class and Massachusetts Subclass are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants and any entity in which Defendants have a controlling interest, or which has a controlling interest in Defendants, and its legal representatives, assigns and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

**Numerosity**

35.    Defendants have harmed and continue to harm the homes, offices, buildings and other structures where XLM Decking is installed.  The members of the proposed Class are so numerous that joinder of all members is impracticable.

36.    The exact number of Class members is unknown as such information is in the exclusive control of Defendants.  However, due to the nature of the trade and commerce involved, Plaintiff believes the Class consists of thousands of consumers, making joinder of all Class members impracticable.

**Common Questions of Law and Fact**

37.    Common questions of law and fact affect the right of each Class member and common relief by way of damages is sought for Plaintiff and Class members.

38.    The harm that Defendants have caused or could cause is substantially uniform with respect to Class members. Common questions of law and fact that affect the Class members include, but are not limited to:

(a)    Whether Defendants sold and entered a defective product into the stream of commerce in Massachusetts and other states;

(b)    Whether Defendants failed to prevent damages that occurred because of the defective product it designed, manufactured, inadequately tested, misleading marketed, and sold into the stream of commerce;

(c)    Whether Defendants were unjustly enriched by the sale of the defective product;

(e)    Whether Defendants breached the 25-year residential and 10-year commercial warranty it represented as existing and engaged in fraudulent, false, deceptive and /or misleading misconduct with respect to the handling of warranty claims;

(g)    Whether Defendants omitted material information when they advertised, marketed, and sold the XLM Decking; and

(i)    Whether the members of the Class have sustained damages and, if so, the proper measure of such damages.

**Typicality**

39.    The claims and defenses of the representative Plaintiff are typical of the claims

and defenses of the Class.

**Adequacy of Representation**

40.     The representative Plaintiff, will fairly and adequately assert and protect the

interests of the Class:

          (a)     He has hired attorneys who are experienced in prosecuting class action

                claims and will adequately represent the interests of the class; and

          (b)     He has no conflict of interest that will interfere with the maintenance of

                this class action.

**Superiority**

41.     A class action provides a fair and efficient method for the adjudication of this

controversy for the following reasons:

          (a)     The common questions of law and fact set forth herein predominate over

                any questions affecting only individual Class members;

          (b)     The Class is so numerous as to make joinder impracticable. However, the

                Class is not so numerous as to create manageability problems. There are

                no unusual legal or factual issues that would create manageability

                problems;

          (c)     Prosecution of a separate action by individual members of the Class would

                create a risk of inconsistent and varying adjudications against Defendants

                when confronted with incompatible standards of conduct;

          (d)     Adjudications with respect to individual members of the Class could, as a

                practical matter, be dispositive of any interest of other members not parties

to such adjudications, or substantially impair their ability to protect their

interests;

(e)    Upon information and belief, Defendants are responsible for the design

and manufacture of the defective XLM Decking, which was used in

Massachusetts, making this forum appropriate for the litigation of the

claims of the entire Class; and

(f)    The claims of the individual Class members are small in relation to the

expenses of litigation, making a Class action the only procedure in which

Class members can, as a practical matter, recover. However, the claims of

individual Class members are large enough to justify the expense and

effort in maintaining a class action.

**TOLLING OF ANY APPLICABLE STATUTES OF LIMITATIONS**

42.    Plaintiff and putative members of the Class are within the applicable statute of

limitation for the claims presented here.  Defendants' failed to disclose this known but non-

public information about the defective nature of their XLM Decking—information over which

they had exclusive control.  Because Plaintiff and Class members therefore could not reasonably

have known that the Decking was defective, Defendants are estopped from asserting any statute

of limitation defenses that might otherwise be applicable to the claims asserted herein.

**COUNT I**
**COUNT I: TIMBERTECH'S BREACH OF IMPLIED WARRANTIES**
**(Brought against TimberTech on behalf of the proposed Class)**

43.    Plaintiff re-alleges and incorporates by reference the allegations contained in all

preceding paragraphs of this Class Action Complaint as though set forth fully herein.

44.    TimberTech designed, developed, manufactured, distributed, and marketed XLM

Decking for purposes of its eventual sale to retail buyers.

45.     TimberTech impliedly warranted that XLM Deck Boards were properly designed, developed, tested, manufactured, distributed, marketed, sold, and installed and that the designs and materials were proper and of workmanlike quality.

46.     Additionally, Mass Gen. Laws Ann. Ch. 106, §§ 2–314 – 318 (Uniform Commercial Code) implies warranties of merchantability and fitness for a particular purpose.

47.     TimberTech knew and intended that XLM Decking would be installed on exterior decks throughout the United States where it would be exposed to variety of environment conditions including high and low temperatures, humid and dry conditions, direct sunlight, shade and precipitation, as well as repeated freeze-thaw cycles.

48.     XLM Decking is not merchantable because it has a propensity to, among other things, severely discolor, or otherwise prematurely degrade in a manner that renders it unfit for the ordinary use of deck construction, and the quality of the Decking is objectionable in the trade.

49.     TimberTech knew that Plaintiff and the Class members would use XLM Decking to construct decks, and Plaintiff and the Class relied upon TimberTech's skill and judgment to furnish suitable decking material. XLM Decking is not fit for its intended purpose because it has a propensity to discolor, or otherwise prematurely degrade prior to the expiration of its warranted or expected useful life.

50.     Plaintiff and the Class relied upon said warranties and the claims, skill, expertise, and quality assurance of TimberTech workers to provide suitable goods.

51.     TimberTech breached said warranties by failing to provide adequate and proper designs, calculations, or materials for XLM Decking.

52.    XLM Decking fails to perform in accordance with the reasonable expectations of Plaintiff and Class members and the benefits of the design of XLM Decking do not outweigh the risk of its failure.

53.    TimberTech had, and has, a duty and responsibility to disclose to the consuming public the foreseeable risks associated with the use of XLM Decking; TimberTech further had, and has, a duty not to put defective products on the market.

54.    But for TimberTech's breach of implied warranty, Plaintiff and the proposed Class would not have sustained damages.

55.    As a direct and proximate result of the breach of said warranties, Plaintiff and the Class have suffered and will continue to suffer loss as alleged herein in an amount to be determined at trial.

56.    Plaintiff, on behalf of himself and all others similarly situated, demands judgment against TimberTech for compensatory damages, for the establishment of a common fund, plus attorneys' fees, interest and costs.

### COUNT II: CPG'S BREACH OF IMPLIED WARRANTIES
#### (Brought against CPG on behalf of the proposed Class)

57.    Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

58.    CPG manufactured, distributed, and marketed XLM Decking for purposes of its eventual sale to retail buyers.

59.    CPG impliedly warranted that XLM Decking is properly designed, developed, tested, manufactured, distributed, marketed, sold, and installed and that the designs and materials were proper and of workmanlike quality.

60.     Additionally, Mass. Gen. Laws Ann. Ch. 106, §§ 2–314 – 318 (Uniform Commercial Code) implies warranties of merchantability and fitness for a particular purpose.

61.     CPG knew and intended that XLM Decking would be installed on exterior decks throughout the United States where it would be exposed to a variety of environment conditions including high and low temperatures, humid and dry conditions, direct sunlight, shade and precipitation, as well as repeated freeze-thaw cycles.

62.     XLM Decking is not merchantable because it has a propensity to, among other things, severely discolor, or otherwise prematurely degrade in a manner that renders it unfit for the ordinary use of deck construction, and the quality of the Decking is objectionable in the trade.

63.     CPG knew that Plaintiff and the Class would use XLM Decking to construct decks, and Plaintiff and the Class relied upon CPG's skill and judgment to furnish suitable decking material; XLM Decking is not fit for its intended purpose because it has a propensity to severely discolor, or otherwise prematurely degrade prior to the expiration of its warranted or expected useful life.

64.     Plaintiff and the Class relied upon said warranties and the claims, skill, expertise, and quality assurance of CPG workers to provide suitable goods.

65.     CPG breached said warranties by failing to provide adequate and proper designs, calculations, or materials for XLM Decking.

66.     XLM Decking fails to perform in accordance with the reasonable expectations of Plaintiff and the Class and the benefits of the design of XLM Decking do not outweigh the risk of its failure.

67.     CPG had, and has, a duty and responsibility to disclose to the consuming public the foreseeable risks associated with the use of XLM Decking; CPG further had, and has, a duty not to put defective products on the market.

68.     But for CPG's breach of implied warranty, Plaintiff and the proposed Class would not have sustained damages.

69.     As a direct and proximate result of the breach of said warranties, Plaintiff and the Class have suffered and will continue to suffer loss as alleged herein in an amount to be determined at trial.

70.     Plaintiff, on behalf of himself and all others similarly situated, demands judgment against CPG for compensatory damages, for the establishment of a common fund, plus attorneys' fees, interest and costs.

### COUNT III: UNJUST ENRICHMENT
#### (Brought against both Defendants on behalf of the proposed Class)

71.     Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

72.     Plaintiff and the Class have conferred substantial benefits on Defendants by purchasing XLM Decking at a premium price compared to alternative materials, and Defendants have knowingly and willingly accepted and enjoyed these benefits.

73.     Defendants either knew or should have known that the payments rendered by Plaintiff and the Class were given and received with the expectation that XLM Decking would perform as represented and warranted.  For Defendants to retain the benefit of the payments under these circumstances is inequitable.

74.    Defendants, through misrepresentations, intentional omissions, or other sharp business practices in connection with the advertising, marketing, promotion, and sale of XLM Decking reaped benefits, which resulted in Defendants' wrongful receipt of profits.

75.    Equity demands disgorgement of Defendants' ill-gotten gains.  Defendants will be unjustly enriched unless Defendants are ordered to disgorge those profits for the benefit of Plaintiff and the Class.

76.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiff and the Class are entitled to restitution from and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendants.

## COUNT IV: NEGLIGENT MISREPRESENTATION
### (Brought against both Defendants on behalf of the proposed Class)

77.    Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

78.    In making material misrepresentations of material facts regarding the characteristics and capabilities of XLM Decking through their advertising, marketing, and product information publications that were in fact untrue, Defendants knew or should have known they were misrepresenting material facts and that the Plaintiff and Class would be relying on Defendants' representations to their detriment and damage.

79.    In concealing material facts regarding the characteristics and capabilities of XLM Decking, Defendants knew or should have known they were not disclosing material facts and that Plaintiff and the Class would be relying on Defendants' representation to their detriment and damage.

80.    Plaintiff and the Class were unaware of the falsity of Defendants' representations, and as a result, they, or their contractor intermediaries, justifiably relied upon them in purchasing or constructing a structure of XLM Decking.

81.    Defendants made the false representations in the course of their business with the intent that Plaintiff and the Class would rely on them and purchase or construct structures using XLM Decking.

82.    As a direct, proximate and foreseeable result of Defendants' failure to fully disclose material facts and its misrepresentations of material facts, Plaintiff and the proposed Class suffered damage.

83.    As a result of Defendants' misconduct, Plaintiff and the Class have suffered actual damages in that they purchased defective XLM Decking.

84.    As a result of Defendants' misconduct, Plaintiff and the Class will suffer damages that include not only the full cost to attempt to repair but, ultimately, to replace their XLM Decking.  Damages also include, without limitation, consequential and incidental damages.

85.    As a direct, proximate and foreseeable result of Defendants' negligent misrepresentations, Plaintiff and the Class sustained damages in an amount to be determined at trial.

86.    Plaintiff, on behalf of himself and all others similarly situated, demands judgment against Defendants for compensatory damages, for the establishment of a common fund, plus attorneys' fees, interest and costs.

### COUNT V:  TIMBERTECH'S NEGLIGENCE
### (Brought against TimberTech on behalf of the proposed Class)

87.    Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

88.     TimberTech owed a duty to Plaintiff and the proposed Class to exercise reasonable care while designing, manufacturing, testing, and marketing XLM Decking.

89.     TimberTech breached its duty to Plaintiff and the Class by designing, manufacturing, selling, inadequately testing, advertising, and warranting a defective product to Plaintiff and the proposed Class and by failing to take those steps necessary to repair or otherwise discontinue selling a defective product to consumers.

90.     TimberTech knew or should have known that XLM Decking is defective and does not perform its intended use. Upon information and belief, initial testing included accelerated weathering tests that failed to account for many of the climates in which XLM Decking would be used.

91.     Despite lacking sufficient knowledge regarding the actual performance of XLM decking, TimberTech marketed and advertised the product as durable, long-lasting, and low maintenance. Additionally, TimberTech sold and represented XLM decking as having certain specifications and properties (as described above).

92.     Plaintiff and the proposed Class were not aware of XLM Decking's defective nature when they purchased the product.

93.     As a direct and proximate cause of TimberTech's failures, Plaintiff and the Class have suffered and will continue to suffer damages and economic loss described fully above in an amount to be proven at trial.

94.     As a result of TimberTech's negligence, Plaintiff and the Class have suffered actual damages in that they purchased and installed on their homes and other structures decking material that is defective and that has failed or is failing prematurely. This failure has required or is requiring Plaintiff and the Class to incur significant expense in repairing or replacing their

decks. Replacement is required to prevent ongoing and future damage to the underlying structure.

95.    Plaintiff, on behalf of himself and all others similarly situated, demands judgment against TimberTech for compensatory damages, for the establishment of a common fund, plus attorneys' fees, interest and costs.

## COUNT VI:  CPG'S NEGLIGENCE
### (Brought against CPG on behalf of the proposed Class)

96.    Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

97.    CPG owed a duty to Plaintiff and the proposed Class to exercise reasonable care while designing, manufacturing, testing, and marketing XLM Decking.

98.    CPG breached its duty to Plaintiff and the Class by designing, manufacturing, inadequately testing, selling, marketing, advertising, and warranting a defective product to Plaintiff and the proposed Class, and by failing to take those steps necessary to repair or otherwise discontinue selling a defective product to consumers.

99.    CPG knew or should have known that XLM Decking is defective and does not perform its intended use.

100.    Upon information and belief, CPG negligently designed or implemented product-testing procedures that failed to accurately report the products' properties or confirm it was manufactured to specification. Upon information and belief some testing included accelerated weathering tests that failed to account for many of the climates in which XLM Decking would be used.

101.    CPG negligently designed XLM Decking in such a way that it contains product defects that cause the material to severely discolor, and otherwise deteriorate within just a few years from installation.

102.    CPG owed a duty of care to Plaintiff and members of the Class to manufacture XLM Decking in a non-defective way and such that it would not develop safety issues of the type described herein.

103.    Plaintiff and the proposed Class were not aware of XLM Decking's defective nature when they purchased the product.

104.    As a direct and proximate cause of CPG's failures, Plaintiff and the Class have suffered and will continue to suffer damages and economic loss described fully above in an amount to be proven at trial.

105.    As a result of CPG's negligence, Plaintiff and the Class have suffered actual damages in that they purchased and installed on their homes and other structures decking material that is defective and that has failed or is failing prematurely.  This failure has required or is requiring Plaintiff and the Class to incur significant expenses in repairing or replacing their decks.  Replacement is required to prevent ongoing and future damage to the underlying structure.

106.    Plaintiff, on behalf of himself and all others similarly situated, demands judgment against CPG for compensatory damages, for the establishment of a common fund, plus attorneys' fees, interest and costs.

## COUNT VII: DECLARATORY AND INJUNCTIVE RELIEF
### (Brought against both Defendants on behalf of the proposed Class)

107.    Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

108.    Defendants acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23.

109.    Plaintiff, on behalf of himself and putative Class members, seek a Court declaration of the following:

    a.  XLM Decking manufactured after January 1, 1996, until the present has defects which cause it to severely and prematurely degrade and discolor resulting in damage to deck structure and the necessity of the removal and replacement of the Decking;

    b.  XLM Decking manufactured after January 1, 1996, until the present has a defect in workmanship and material that causes failures;

    c.  Defendants knew of the defects in XLM Decking and that the limitation contained in the warranties was unenforceable;

    d.  Defendants shall re-audit and reassess all prior warranty claims on XLM Decking, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds; and

    e.  Defendants shall establish an inspection program and protocol to be communicated to Class members, which will require Defendants to inspect, upon request, a Class member's structure to determine whether an XLM Decking failure is manifest.

## COUNT VIII: VIOLATION OF M.G.L. c. 93A
### (Brought against both Defendants on behalf of the Massachusetts Subclass)

110.    Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

111.    Plaintiff brings this claim on behalf of himself and all other persons who purchased XLM Decking, asserting claims pursuant to M.G.L. c. 93A.

112.    M.G.L. c. 93A, § 2 provides that "unfair methods of competition and unfair and deceptive acts or practices in the conduct of any trade or commerce are hereby declared

unlawful." M.G.L. 93A, § 9 permits any consumer injured by a violation of M.G.L. c. 93A, § 2 to bring a civil action, including a class action, for damages and injunctive relief.

113.    As alleged more fully herein, Defendants have violated c. 93A, § 2 by providing XLM Decking that is defective and, as alleged herein, is inconsistent with Defendants' representations about, among other things, durability and maintenance requirements.

114.    Pursuant to M.G.L. c. 93A, § 9, Plaintiff, on behalf of himself and the Massachusetts Subclass, seeks an order:

      a.  enjoining Defendant from continuing to engage in, use, or employ any of the unfair and/or deceptive business acts or practices set forth in detail above; and

      b.  disgorging and restoring all monies that may have been acquired by Defendant as a result of such unfair and/or deceptive acts or practices.

115.    Plaintiff and members of the Massachusetts Subclass will be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

116.    The unfair and deceptive acts and practices of Defendants, as described above, present a serious threat to Plaintiff and members of the Massachusetts Subclass.

117.    Despite the fact that Plaintiff believes, upon information and belief, that Defendants do not maintain a place of business or keep assets within the Commonwealth, out of an abundance of caution, Plaintiff sent demand letters pursuant to c. 93A, §9(3), June 6, 2014 and June 19, 2014.  Defendants responded through their counsel in a letter dated July 9, 2014.  Plaintiff replied to Defendants' July 9, 2014, letter on July 23, 2014.  Defendants made a conditional offer to Plaintiff, but failed to make an offer to the proposed Class.  As a result, Plaintiff refused Defendants' tentative offer and elected to file the instant amended complaint.

118.    Based on the foregoing, Plaintiff and the other members of the Massachusetts Subclass are entitled to all remedies available pursuant to c. 93A including, but not limited to, refunds, actual damages, or statutory damages in the amount of twenty five dollars per violation, whichever is greater, double or treble damages, attorneys' fees and other reasonable costs.

119.    Pursuant to M.G.L. c. 231, § 6B, Plaintiff and other members of the Massachusetts Subclass are further entitled to pre-judgment interest as a direct and proximate result of Defendant's wrongful conduct. The amount of damages suffered as a result is a sum certain and capable of calculation and Plaintiff and Massachusetts Subclass members are entitled to interest in an amount according to proof.

120.    Massachusetts has a strong interest in applying the c. 93A to the conduct at issue here.   Plaintiff is located here, as is the Massachusetts Subclass and Defendants advertised, marketed and sold products in Massachusetts.

## PRAYER FOR RELIEF

121.    WHEREFORE, Plaintiff prays that this case be certified and maintained as a Class action and for judgment to be entered jointly and severally upon Defendant TimberTech and Defendant CPG as follows:

A. Enter an order certifying the proposed Class, designating Plaintiff as the Class representative, and designating the undersigned as Class counsel;

B. Declare that Defendants are financially responsible for notifying all Class members of the problems with XLM Decking;

C. Declare that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of XLM Decking, or order Defendants to make full restitution to Plaintiff and the members of the Class;

D. Defendants shall re-audit and reassess all prior warranty claims regarding XLM Decking, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds;

E.  For economic and compensatory damages on behalf of Plaintiff and all members of the Class;

F.  For actual damages sustained or treble damages;

G.  For punitive or exemplary damages;

H.  For injunctive and declaratory relief;

I.  For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

J.  For such other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

**Dated:  July 31, 2014**            Respectfully submitted,

By:/s/ Erica C. Mirabella_____
Erica C. Mirabella (MA Bar No. 676750)
MIRABELLA LAW
1322 Boylston St., 5th Flr.
Boston, MA 02116
(617) 580-8270
(617) 583-1905 (fax)

Matthew E. Miller (MA Bar No. 559353)
William H. Anderson
CUNEO GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
(202) 789-3960
(202) 789-1813 (fax)

Charles J. LaDuca
CUNEO GILBERT & LADUCA, LLP
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814
(202) 789-3960
(202) 789-1813 (fax)

Robert K. Shelquist
LOCKRIDGE GRINDAL NAUEN PLLP
Suite 2200
100 Washington Avenue S
Minneapolis, MN 55401
(612) 339-6900
(612) 339-0981 (fax)

Michael A. McShane
 AUDET & PARTNERS, LLP
 221 Main Street, Suite 1460
 San Francisco, CA 94105
(415) 568-2555
(415) 576-1776 (fax)