# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

TODD M. GORNSTEIN, on behalf of himself
and all others similarly situated,

        *Plaintiff,*

    v.

TIMBERTECH LTD., and
CPG INTERNATIONAL, INC.,

        *Defendants.*

C.A. No. 1:14-cv-12409-MLW

Class Action

**CORRECTED PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS .......................................................................................... i

TABLE OF AUTHORITIES .................................................................................. iii

I.   INTRODUCTION ......................................................................................... 1

II.  LEGAL STANDARD ................................................................................... 2

III. FACTUAL AND PROCEDURAL BACKGROUND ..................................... 4

IV.  TERMS OF THE PROPOSED SETTLEMENT ............................................ 6

     A.   The Settlement Class .......................................................................... 6

     B.   Relief To Settlement Class Members ................................................. 7

     C.   Incentive Award And Attorney's Fees ............................................... 8

     D.   Release ............................................................................................... 8

     E.   Notice And Right To Opt Out ............................................................ 8

V.   THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY
     APPROVED ................................................................................................. 9

     A.   There Is No Risk Of Fraud Or Collusion Because The Settlement
          Agreement Was Negotiated At Arm's Length By Reputable Lawyers And
          Facilitated By A Highly Experienced Mediator ................................. 10

     B.   If The Litigation Proceeds, It May Be Years Before The Class Recovers, If
          At All ................................................................................................. 11

     C.   The Proposed Settlement Provides The Settlement Class With Substantial
          Relief ................................................................................................. 12

VI.  THE REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS
     ARE SATISFIED ......................................................................................... 13

     A.   Rule 23(a)'s Requirements Are Satisfied ........................................... 13

          1.   Numerosity ................................................................................. 13

          2.   Commonality .............................................................................. 13

          3.   Typicality ................................................................................... 14

**Page**

        4.    Adequacy Of Representation ....................................................15

    B.    The Settlement Class Should Be Preliminarily Approved Under Rule 23(b)(3) ..............................................................................................15

        1.    Rule 23(b)(3)...............................................................................15

                a.    Predominance.............................................................16

                b.    Superiority..................................................................17

VII.    THE PROPOSED NOTICE SATISFIES THE REQUIREMENTS OF FED. R. CIV. P. 23. ..................................................................................................18

    A.    Legal Standard For Approval Of A Notice Plan...................................18

    B.    The Content Of The Notice Is Appropriate ........................................19

    C.    The Manner Of Providing Notice Is Appropriate ................................19

VIII.    CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997) .......................................................... passim

*Andrews v. Bechtel Power Corp.,* 780 F.2d 124 (1st Cir. 1985) .................................................. 15

*Bussie v. Allmerica Fin. Corp.*, 50 F.Supp.2d 59 (D.Mass. 1999) ................................................ 12

*Careccio v. BMW of N. Am. LLC*, No. 08–2619, 2010 WL 1752347 (D.N.J. Apr. 29, 2010) .................................................................................................................................... 12

*Cf. Hochstadt v. Bos. Scientific Corp*., 708 F. Supp. 2d 95 (D. Mass. 2010) ............................. 10

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship,* 100 F.3d 1041 1st Cir. 1996) ........................... 2, 4

*Duhaime v. John Hancock Mut. Life Ins. Co.,* 177 F.R.D. 54 (D. Mass. 1997) .......................... 15

*Durrett v. Providence Hous. Auth.*, 896 F.2d 600 (1st Cir. 1990).................................................. 9

*East Tx. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395 (1977) .......................................... 14

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974)...................................................................... 4

*García– Rubiera v. Calderon,* 570 F.3d 443 (1st Cir. 2009)....................................................... 14

*Gen. Tel. Co. v. Falcon,* 457 U.S. 147 (1982) .............................................................................. 4

*Gorsey v. I.M. Simon & Co.*, 121 F.R.D. 135 (D. Mass. 1988) ................................................... 13

*Grace v. Perception Tech., Inc*., 128 F.R.D. 165 (D. Mass. 1989)............................................... 17

*In re Am. Med. Sys., Inc.,* 75 F.3d 1069 (6th Cir. 1996)............................................................. 14

*In re Bos. Scientific Corp. Sec. Litig.,* 604 F. Supp. 2d 275 (D. Mass. 2009) ....................... 14, 15

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197 (D. Me. 2003)....................................................................................................................................... 20

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382 (D. Mass. 2011) .................................................................................................................................... 16

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .......................................................................... 10

**Page**

*In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768 (3d Cir. 1995) ................................................................................................ 3

*In re Lupron Mktg. and Sales Practices Litig.,* 345 F. Supp. 2d 135 (D. Mass. 2004) .... 3, 4, 9, 20

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.,* 270 F.R.D. 45 (D. Mass. 2010) ........................................................................................................ 3

*In re Pharm. Indus. Average Wholesale Price Litig.,* 588 F.3d 24 (1st Cir. 2009) ...................... 3

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283 (3d Cir. 1998) .................................................................................................. 14

*In re Volkswagen and Audi Warranty Extension Litig.,* 273 F.R.D. 349 (D. Mass. 2011) ........................................................................................................ 20

*In re Volkswagen,* 2010 WL 3769259 (D. Mass. September 22, 2010) ....................... 20

*Lazar v. Pierce,* 757 F.2d 435 (1st Cir. 1985) ................................................................. 9

*Lorazepam v. Mylan Labs., Inc.,* Nos. MDL 1290 (TFH), 99MS276 (TFH), 2003 WL 22037741 (D.D.C. June 16, 2003) .................................................................. 11

*Luevano v. Campbell,* 93 F.R.D. 68 (D.D.C.1981) ........................................................ 12

*Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Ass'n,* 582 F.3d 30 (1st Cir. 2009) ................................................................................................. 3

*Nilsen v. York Cnty.,* 228 F.R.D. 60 (D. Me. 2005) ....................................................... 3

*Novella v. Westchester Cnty.,* 661 F.3d 128 (2d Cir. 2011) ......................................... 13

*Ortiz v. Fibreboard Corp.,* 527 U.S. 815 (1999) ......................................................... 13

*Otte ex rel. Estate of Reynolds v. Life Ins. Co. of N. Am.,* 275 F.R.D. 50 (D. Mass. 2011) ........................................................................................................ 16

*Parker v. Time Warner Entm't Co.,* LP, 631 F. Supp. 2d 242 (E.D.N.Y 2009) ......................... 12

*Perez v. Asurion Corp.,* 501 F. Supp. 2d 1360 (S.D. Fla. 2007) ................................... 12

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985) ................................................ 17

*Randle v. SpecTran,* 129 F.R.D. 386 (D. Mass. 1988) ................................................. 17

*Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208 (1974) ..................... 14

Page

*Smilow v. Sw. Bell Mobile Sys., Inc.,* 323 F.3d 32 (1st Cir. 2003) ..................................... 4, 16, 17

*Swack v. Credit Suisse First Bos.*, 230 F.R.D. 250 (D. Mass. 2005) ........................................... 13

*U.S. v. Mass.*, 869 F.Supp.2d 189 (D. Mass. 2012) ........................................................................ 12

*Voss v. Rolland*, 592 F.3d 242 1st Cir. 2010) ................................................................................. 2

*Wal–Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011) ............................................................. 13

*Waste Mgt. Holdings, Inc. v. Mowbray,* 208 F.3d 288 (1st Cir. 2000) .................................... 4, 16

**STATUTES**

Fed. R. Civ. P. 23(a) ..................................................................................................... 13, 14, 15

Fed. R. Civ. P. 23(b)(3) ...................................................................................................... 16, 17

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................. 18, 19

Fed. R. Civ. P. 23(e)(1) ......................................................................................................... 4, 18

Fed. R. Civ. P. 23(e)(2) .............................................................................................................. 2

**OTHER AUTHORITIES**

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778 (3d
ed. 2011) ......................................................................................................................... 16

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §11.41 (4th ed. 2011).............. 10

*Manual for Complex Litigation (Fourth)* §21.632 (2004) ............................................................ 3

**CORRECTED PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## I.     INTRODUCTION

The Parties have reached a proposed settlement of this nationwide class action (the "Proposed Settlement") in which Settlement Class Members[1] can receive, subject to proof, free replacement decking materials, compensation for labor and consequential damages.  Exhibit A to Declaration of William H. Anderson ("Anderson Decl."), Settlement Agreement and Release of Claims.  This Proposed Settlement is an excellent result, as it provides Settlement Class Members with meaningful relief, while taking into account the variety of risks Plaintiff would face if the litigation progressed, as well as the delay in getting relief to members of the Class.

At the outset, Plaintiff notes that while Defendants join with Plaintiff in the Motion seeking preliminary approval, this Memorandum was prepared by, and exclusively reflects, Plaintiff's views.

The Proposed Settlement was reached after more than a year of arm's length negotiation, which included research of state and federal law, the drafting of a federal complaint (and an amended complaint), the interviewing of numerous potential class members, consultation with experts, informal discovery, letters, conference calls and two mediations before a skilled neutral mediator, the Honorable Charles M. Swartwood, III of JAMS.

Following these events, counsel for Plaintiff and Defendants were fully informed of the factual and legal issues of the case.  Indeed, while the case initially focused on all XLM decking,

---

[1] All capitalized terms shall have the same meaning as ascribed to them in the Settlement Agreement of Release of Claims.

the Parties ultimately settled with respect to two colors of XLM (Mountain Cedar and Desert Bronze), which, in stark contrast to the other colors of XLM, had a warranty claim rate of approximately 75%. Given counsel's intimate knowledge of the facts and legal issues, as well as their substantial experience in nationwide class actions involving construction products, Plaintiff submits that the Proposed Settlement achieves an excellent result and is in the best interests of the Settlement Class. The Proposed Settlement provides direct and substantial relief to Settlement Class Members who have a Covered Condition, which includes, whitening, scorching (i.e., black staining) or manifestation of surface fime (i.e., blistering). The claim form is simple and straightforward; it is designed to be easy to complete, but also calculated to prevent potentially fraudulent claims. The Proposed Settlement is comprehensive, offering Settlement Class Members, subject to proof, free materials, compensation for labor, as well as free fasterners and funds for any collateral damage to property caused by a TimberTech Deck. Plaintiff contends that the Proposed Settlement falls well within the range of reasonableness in light of: (1) the very significant recovery achieved; (2) the costs and risks of prosecuting this action to trial; and (3) Defendants' potential defenses.

Accordingly, Plaintiff respectfully requests the Court grant preliminary approval of the Proposed Settlement so that notice can be distributed to Settlement Class Members and a fairness hearing can be scheduled to consider final approval of the Proposed Settlement.

## II.    LEGAL STANDARD

A district court reviews a proposed class action settlement to determine whether it is fair, reasonable and adequate. *See* Fed. R. Civ. P. 23(e)(2); *accord*, *Voss v. Rolland*, 592 F.3d 242, 251 (1st Cir. 2010); *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). The Court enjoys "great discretion to 'balance [a settlement's] benefits and costs' and apply this general standard." *Voss, supra*, 592 F.3d at 251, *citing Nat'l Ass'n of Chain Drug*

*Stores v. New England Carpenters Ass'n,* 582 F.3d 30, 45 (1st Cir. 2009). If the parties negotiated at arm's length and conducted sufficient discovery, a presumption is created that the settlement is reasonable. *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009). More specifically, a presumption of fairness attaches to the court's preliminary fairness determination when "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Lupron Mktg. and Sales Practices Litig.,* 345 F. Supp. 2d 135, 137 (D. Mass. 2004) *(*quoting *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 785 (3d Cir. 1995)).

At the "preliminary approval" stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms . . . ." *Manual for Complex Litigation (Fourth)* §21.632 (2004) ("*Manual*"). As Judge Woodlock has noted:

> When asked to review a class action settlement preliminarily, I examine the proposed settlement for obvious deficiencies before determining whether it is in the range of fair, reasonable, and adequate. *See, e.g., Manual for Complex Litigation (Fourth)* § 21.632. The Advisory Notes to the 2003 Amendments to Rule 23 caution that "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." Fed. R. Civ. P. 23 advisory committee's note (2003). Ultimately, the more fully informed examination required for final approval will occur in connection with the Final Fairness Hearing, where arguments for and against the proposed settlement will be presented after notice and an opportunity to consider any response provided by the potential class members.

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 62 (D. Mass. 2010) (alterations in original). *See also Nilsen v. York Cnty.,* 228 F.R.D. 60, 62 (D. Me. 2005) (expressing doubt about whether preliminary approval is anything more than a determination that the settlement "deserves consideration by the class and whether the notice is appropriate."). All courts agree that a final determination about whether the settlement is ultimately fair, reasonable and adequate is an issue that cannot be determined until the final approval hearing.

In order to certify a settlement class at the preliminary approval stage, the Court must also determine whether the requirements of Rule 23 are met. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997) ("*Amchem*"). Hence, "[a] district court must conduct a rigorous analysis of the prerequisites established by Rule 23." *Smilow v. Sw. Bell Mobile Sys., Inc.,* 323 F.3d 32, 38 (1st Cir. 2003) (citing *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161 (1982)). In doing so, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Waste Mgt. Holdings, Inc. v. Mowbray,* 208 F.3d 288, 298 (1st Cir. 2000) (quoting *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178 (1974)). "When a settlement class is proposed, it is incumbent on the district court to give heightened scrutiny to the requirements of Rule 23 in order to protect absent class members." *In re Lupron Mktg. and Sales Practices Litig.,* 228 F.R.D. 75, 88 (D. Mass. 2005) (citing *Amchem,* 521 U.S. at 620). "This cautionary approach notwithstanding, the law favors class action settlements." *Id.* (*citing City P'ship Co. v. Atl. Acquisition Ltd. P'ship,* 100 F.3d 1041, 1043 (1st Cir. 1996)).

Finally, the court must approve the proposed notice to class members and the settling parties' notice plan. Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal."). For the reasons discussed below, Plaintiff believes that preliminary approval of the Proposed Settlement, certification of the Settlement Class, appointment of the Settlement Class Representative and Settlement Class Counsel and approval of the Notice are in the best interests of Plaintiff and the Settlement Class.

## III.    FACTUAL AND PROCEDURAL BACKGROUND

This litigation concerns synthetic decking produced by TimberTech. Synthetic decking is a blanket term that refers to decking not made exclusively of wood. A variety of synthetic decking types exist—sometimes synthetic decking contains organic material; sometimes it does

not.  In this case, XLM is made of solid polyvinyl chloride ("PVC").  The deck boards are generally created by heating, coloring, and shaping a PVC mixture into boards of different lengths and then using a co-extrusion process to create the finished product, which includes an interior and cap components.  Plaintiffs allege that TimberTech Decking is defective in that it is subject to a variety of defects including scorching and fading, as well as failure that can cause consequential damage to property on which it is affixed, and that TimberTech Decking does not perform throughout its 25 year residential and 10 year commercial warranted life.

Following months of research and interviews of numerous proposed class members, Plaintiff sent a c. 93A demand letter and subsequently filed his complaint in the United States District Court for the District of Massachusetts on June 6, 2014.  Anderson Decl., ¶¶ 9-10.  Defendants responded to the 93A letter and Plaintiff replied, at which point Defendants substituted counsel.  Anderson Decl., ¶¶ 10-11.  Subsequently, Plaintiff filed his Amended Complaint and Defendants answered in lieu of moving to dismiss.  Anderson Decl., ¶ 11.

Following Defendants' answer a dialogue began between counsel for the Parties directed at the potential for settlement.  Anderson Decl., ¶ 12.  The Parties quickly determined that exploring the possibility of early resolution would be worthwhile.  *Id*.  Over the course of the months that followed, multiple conversations took place by phone and the Parties exchanged correspondence.  Anderson Decl., ¶ 13.  When it became evident that a framework for reolution could be potentially agreed upon, Plaintiff's counsel aggressively pursued targeted informal discovery aimed at the most salient details related to TimberTech Decking and the Covered Conditions.  *Id*.  On a parallel track, the Parties scheduled mediation and prepared mediation statements.  Anderson Decl., ¶ 15.  The first mediation occurred on November 18, 2014, in Columbus Ohio.  *Id*.  While the mediation was productive, the Parties were unable to reach agreement.  *Id*.  However, in the weeks and months that followed the Parties kept an open

dialogue, working through a variety of issues to identify points of agreement. Anderson Decl., ¶ 16. The Parties also solicited and received additional information relevant to the ongoing settlement discussions. *Id.* While the Complaint alleged that all TimberTech XLM decking was defective, after reviewing discovery, Plaintiff agreed to narrow the focus of settlement negotiations to products with certain colors, as ultimately reflected in the Settlement Agreement. Anderson Decl., ¶ 13. Having secured that information, the Parties set about preparing the Settlement Agreement that memorialized the points of agreement. Anderson Decl., ¶ 16. Only after resolving all substantive components of the Settlement did the Parties engage in negotiation regarding a service award for Plaintiff Gornstein and attorney's fees and costs. Anderson Decl., ¶ 17. The Parties again called upon Judge Swartwood to assist in negotiation of these figures. *Id.* Ultimately, the Parties agreed upon a mediator's proposal and set about finalizing all necessary documents and preparing the preliminary approval papers. Anderson Decl., ¶ 18.

## IV. TERMS OF THE PROPOSED SETTLEMENT

The complete terms of the Proposed Settlement are set forth in the concurrently filed Settlement Agreement, which is attached to the Anderson Declaration as Exhibit A, and are summarized below.

### A. The Settlement Class

The Settlement Class is defined as:

> all owners, or former owners with a valid legal assignment from an owner, of residences or commercial buildings in the United States with a TimberTech Deck purchased during the Class Period.

Settlement Agreement §A.27. A TimberTech Deck is defined as "Defendant TimberTech's XLM Desert Bronze decking, sold to end users or their agents or contractors on or before November 1, 2011, and XLM Mountain Cedar decking, sold to end users or their agents or contractors on or before August 31, 2010." *Id.* at §A.29.

- 6 -

### B.    Relief To Settlement Class Members

The Proposed Settlement offers each Settlement Class Member with a TimberTech Deck that exhibits a Covered Condition free replacement materials. Settlment Agreement §D.2.a. Although the original agreement of the Parties contemplated a direct replacement of newer production materials of the colors at issue, because Defendants have ceased, or are in the process of ceasing production of Desert Bronze and Mountain Cedar, the original draft Settlement Agreement was revised in September 2015 to provide a broad variety of alternatives including similar colors and multiple TimberTech lines.   *Id.*   In addition, the Settlement Agreement provides labor reimbursement at a rate of $4.50 per square foot.   *Id.*   To the extent a Settlement Class Member has already received a replacement deck for a TimberTech Deck and were provided labor reimbursement at a rate of less than $4.50, those individuals are entitled to a supplemental payment that brings their reimbursement to $4.50 per square foot.   *Id.* The replacement of a TimberTech Deck will not limit the existing warranty that came with the TimberTech Deck.   Settlement Agreement §D.2.b.   Additionally, subject to proof, Settlement Class Members shall be eligible for up to $100 for any consequential damages caused by removal of the TimberTech.   Settlement Agreement §D.3.   Finally, should an Eligibile Claimant choose not to take advantage of the Replacement Option, they are entitled to elect a one-time cash payment of $400.   Settlement Agreement §D.2.c.   There is no limit upon the number or value of claims to be made.   There is no reverter, nor any potential for *pro rata* reduction of the amounts to be provided to Settlement Class Members, except for the $100 consequential damage payments, which are capped at a total of $100,000.   Payment of Attorneys' Fees and Costs will be made separate and independent of funds directed to Settlement Class Members and the Fee Award will not reduce the relief to Settlement Class Members.   Settlement Agreement §L.

### C.    Incentive Award And Attorney's Fees

Defendants agree to not oppose Plaintiff's counsel's application for Attorneys' Fees and Costs, as long as the amount sought does not exceed $329,000, and Plaintiff's counsel agree not to seek an amount in excess of $329,000.  As referenced above, this amount was proposed by Judge Swartwood and accepted by the Parties after receiving written submissions from the Parties, conducting teleconferences and holding a mediation dedicated to the issue.  Anderson Decl., ¶¶ 17-18.

Defendants further agree to not oppose a petition for an incentive award of no more than $4,800 for Plaintiff Gornstein, who put forth significant time and effort to advance the interests of the Class.  Settlement Agreement §L.

### D.    Release

Upon the Court's entry of the Final Judgment and Order Approving Settlement, each Releasing Party shall be deemed to have released and forever discharged the Released Parties, including Defendants, from liability for any and all actions or claims of any nature, arising out of or in any way relating to conduct that was or could have been alleged in this Action.  Settlement Agreement §A.25-26.

### E.    Notice And Right To Opt Out

Upon the Court's grant of Preliminary Approval to the Proposed Settlement, the Notice Provider will disseminate notice by individually addressed letters to all known Class Members for whom TimberTech possesses an address.  Settlement Agreement, Exhibit B at ¶1.  In addition, the Notice Provider shall create a website dedicated to the Settlement with a variety of case-related documents including Settlement Agreement and Release of Claims as well as key court documents.     Settlement Agreement, Exhibit B at ¶2.  The Notice Provider will also publish, within 60 days of Preliminary Approval, a 1/8 page notice concerning the Settlement on

four separate dates in *USA Today*. Settlement Agreement, Exhibit B at ¶3. A 1/3 page notice will also be published in *This Old House* not later than 60 days after Preliminary Approval. Settlement Agreement, Exhibit B at ¶4. Finally, Defendants will purchase banner advertisements for Internet searches of key terms related to the Settlement, and banner advertisements on various websites related to home construction and renovation for an estimated 5,000,000 impressions. Settlement Agreement, Exhibit B at ¶5-6. And the Notice Provider will provide a declaration attesting to the Court that the best notice practicable was provided an that the reach was sufficient to meet the Due Process requirements of Rule 23. Settlement Agreement §F.2.

Settlement Class Members shall have until no later than 45 days after notice is sent to the Class to request exclusion from the Settlement. Settlement Agreement §A.22. Settlement Class Members shall have until 45 days before the date set for the Final Settlement Hearing to postmark any Notice of Intent to Object, and any Notice of Intent to Object must be filed with the Clerk of Court not later than 30 days before the date set for the Final Settlement Hearing. Settlement Agreement §H.1.

## V.     THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

The First Circuit has recognized the policy in favor of encouraging class action settlements. *Durrett v. Providence Hous. Auth.*, 896 F.2d 600, 604 (1st Cir. 1990) (reversing denial of approval of class action settlement as an abuse of discretion); *Lazar v. Pierce*, 757 F.2d 435, 440 (1st Cir. 1985) (noting the "overriding public interest in favor of the voluntary settlement of disputes, particularly where class actions are involved."); *In re Lupron*, 228 F.R.D. at 88 (noting that, "the law favors class action settlements."). As discussed below, the Settlement Agreement is fair, reasonable and adequate and worthy of approval. Plaintiff respectfully requests that the Court grant preliminary approval and order Notice to Settlement Class Members.

**A.      There Is No Risk Of Fraud Or Collusion Because The Settlement Agreement Was Negotiated At Arm's Length By Reputable Lawyers And Facilitated By A Highly Experienced Mediator**

The Parties reached the Settlement after more than a year of negotiations.  Anderson Decl., ¶ 12.  At times the negotiations were tense and adversarial and it did not appear that a settlement could be obtained.  Anderson Decl., ¶ 16.  The Settlement was negotiated at arm's length by experienced counsel on both sides, who are fully versed in complex class action litigation, particularly with respect to construction products.  Anderson Decl., ¶ 8.  Further indicating the lack of collusion, and general legitimacy of the Settlement, the Settlement was negotiated with the assistance of a respected former judge and mediator, the Honorable Charles M. Swartwood, III (ret.).  Anderson Decl., ¶ 14.  Once the material terms of the Settlement were agreed upon, the Parties commenced focused negotiations pertaining to the Plaintiff incentive award, as well as attorney's fees and costs.  Ultimately, direct negotiation between the Parties did not yield consensus.  As a result, the Parties agreed to again mediate before Judge Swartwood, who ultimately provided a mediator's proposal that the Parties accepted.

These factors demonstrate that the Agreement was not the product of collusion.  "[T]here is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for court approval."  4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §11.41 (4ᵗʰ ed. 2011); *Cf. Hochstadt v. Bos. Scientific Corp.*, 708 F. Supp. 2d 95, 108 (D. Mass. 2010) (evaluating the experience of counsel in preliminary approval process as a factor that contributes to the presumption of fairness); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *14 (S.D.N.Y. Nov. 8, 2010) (experience of counsel and skill of mediator contribute to presumption of fairness).

The Parties were fully informed of the factual and legal issues because they engaged in specific and targeted confirmatory discovery. Anderson Decl., ¶¶ 13, 16. Plaintiff was provided with documents relating to among other things, sales, defect complaints, warranty data, and historical pricing data. *Id*. Thus, Plaintiff's counsel requested, received and reviewed information pertaining to the heart of his claims. In sum, Plaintiff was fully informed of the key factual and legal issues of the case when the Proposed Settlement was reached.

Plaintiff's counsel has deep and substantial experience with consumer class actions in general and construction product class actions in particular. Anderson Decl., ¶ 8. Similarly, Defendants' counsel, Foley Hoag LLP, has existed for approximately 70 years and employs over 250 lawyers, with offices in Boston, New York, Paris and the District of Columbia. Because the Parties' counsel are experienced and informed about the facts of the case, their support of the Proposed Settlement is entitled to considerable weight. *See Lorazepam v. Mylan Labs., Inc.*, Nos. MDL 1290 (TFH), 99MS276 (TFH), 2003 WL 22037741, at *6 (D.D.C. June 16, 2003) (stating the opinion of experienced counsel "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement").

## B.     If The Litigation Proceeds, It May Be Years Before The Class Recovers, If At All

Further supporting approval of the Proposed Settlement is the fact that, absent a settlement, it would likely be years before the Settlement Class obtained any relief—and Settlement Class Members might ultimately get nothing. Prior to reaching judgment, in addition to trial and trial-related preparations and motions, the Parties would likely have to litigate: (a) motions to compel discovery; (b) a vigorously contested class certification motion; (c) summary judgment; (d) a trial on the merits, and (e) the issue of the amount of damages and/or penalties to award. Appellate proceedings are also likely given the numerous issues raised by this case. An appeal of a class certification decision alone could take many months, and a petition for

interlocutory review under Fed. R. Civ. P. 23(f) could be filed following a decision on class certification.   As courts throughout the country have repeatedly recognized, avoiding future contentious litigation and the risk and delay that litigation entails favors settlement.  *See U.S. v. Mass.*, 869 F.Supp.2d 189, 193 (D. Mass. 2012) ("Th[e] fairness determination is not based on a single inflexible litmus test, but, instead, reflects [the court's] studied review of a wide variety of factors bearing on the cenral question of whther the settlement is reasonable in light of the uncertainty of litigation.") (quoting *Bussie v. Allmerica Fin. Corp.*, 50 F.Supp.2d 59, 72 (D.Mass. 1999); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear."); *Luevano v. Campbell*, 93 F.R.D. 68, 89 (D.D.C.1981) ("[T]he delay in providing relief to the class if this case were to be litigated is a factor strongly supporting the compromise reached by the parties.").

### C.    The Proposed Settlement Provides The Settlement Class With Substantial Relief

Although "full compensation is not a prerequisite for a fair settlement[,]" *Careccio v. BMW of N. Am. LLC*, No. 08–2619, 2010 WL 1752347, at * 6 (D.N.J. Apr. 29, 2010)[3] the Proposed Settlement is nevertheless structured in a way to permit each Settlement Class Member who submits a proper claim to receive a brand new replacement deck with free materials and significant reimbursement for labor costs.  When viewed against the backdrop of the substantial

---

[3] *See Parker v. Time Warner Entm't Co.*, LP, 631 F. Supp. 2d 242, 261–62 (E.D.N.Y 2009) ("'[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.'") (internal citation omitted).

legal obstacles Plaintiff faces, the relief provided by the Proposed Settlement is more than adequate.

## VI.    THE REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS ARE SATISFIED

This Court must consider whether a class can be preliminarily certified under Rules 23(a) and (b).  *See Amchem*, 521 U.S. at 619-21; *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 858 (1999). The Parties here negotiated a settlement that can easily be certified under Rule 23, in light of the applicable standards.

### A.    Rule 23(a)'s Requirements Are Satisfied

#### 1.    Numerosity

Rule 23(a)(1) requires that "the class [be] so numerous the joinder of all members is impracticable."  Fed. R. Civ. P. 23(a); *Swack v. Credit Suisse First Bos.*, 230 F.R.D. 250, 258 (D. Mass. 2005).  The standard of impracticability does not mean "impossibility," but only difficulty or inconvenience of joining all members of the class.  *Novella v. Westchester Cnty.*, 661 F.3d 128, 143 (2d Cir. 2011).  Records provided by Defendants demonstrate that the proposed Settlement Class encompasses thousands of individuals, dispersed throughout the United States. The overwhelming number of Settlement Class Members demonstrates that joinder is a logistical impossibility.  *See, e.g.*, *Gorsey v. I.M. Simon & Co.*, 121 F.R.D. 135, 138 (D. Mass. 1988) (proposed class consisting of 800 to 900 members made joinder impracticable).

#### 2.    Commonality

Under *Wal-Mart*, a plaintiff has to demonstrate that the class claims "depend upon a common contention" and that determining the truth or falsity of that contention "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal–Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2554 (2011).  The claims of the Proposed Settlement Class here rest on a significant common issue, which is whether the TimberTech Decks at issue suffer from

a common defect that causes, among other things, scorching and fading.  Each Settlement Class Member purchased a TimberTech Deck with what Plaintiff asserts is a common production defect.  Resolution of whether Defendants' TimberTech Decks suffer from this defect would resolve an issue central to the validity of the various claims brought by Plaintiff for the Settlemnt Class.

### 3.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class…."  The requirement is satisfied if the "class representative[s] . . . 'possess the same interest and suffer the same injury' as the class members."  *East Tx. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)).  Typicality is present when the class representatives' claims "arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and ... are based on the same legal theory."  *García– Rubiera v. Calderon,* 570 F.3d 443, 460 (1st Cir. 2009) (quoting *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1082 (6th Cir. 1996)) (alterations in original).  The typicality inquiry allows the court to "'align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.'"  *In re Bos. Scientific Corp. Sec. Litig.,* 604 F. Supp. 2d 275, 282 (D. Mass. 2009) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 311 (3d Cir. 1998)).

The Class Representative in this action alleges the same injury as the Settlement Class—that he purchased a TimberTech Deck that suffers from a defect that has caused it to discolor in an untimely fashion.

### 4.    Adequacy Of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  This element is generally characterized as an inquiry into whether the attorneys together with the named plaintiff will act diligently on behalf of the class.  *Amchem*, 521 U.S. at 625; *Duhaime v. John Hancock Mut. Life Ins. Co.,* 177 F.R.D. 54, 63-64 (D. Mass. 1997).  The First Circuit employs a two-part test in analyzing adequacy: (1) the class representatives' interests must not conflict with the interests of the class; and (2) class counsel is experienced, qualified and able to vigorously conduct the proposed litigation.  *Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 130 (1st Cir. 1985); *In re Bos. Scientific Corp. Sec. Litig.,* 604 F. Supp. 2d at 282.

Both requirements are met.  First, as has been previously submitted to the Court, Plaintiff's counsel are experienced class action lawyers whose combined experience in consumer protection and complex class action litigation, and current diligence and commitment to this litigation, will more than adequately protect the interests of the Settlement Class.  *See* Anderson Decl., Exhibits 2-5 (curriculum vitaes of Cuneo Gilbert & LaDuca, LLP; Lockridge Grindal Nauen PLLP; Audet & Partners, LLP; and Mirabella Law).

Second, there is no conflict or antagonism between the proposed Class Representative and the Settlement Class Members.  The Class Representative shares a united interest with the Settlement Class in enforcing the rights of Settlement Class Members to obtain redress for the alleged defects in the TimberTech Decks at issue.

### B.    The Settlement Class Should Be Preliminarily Approved Under Rule 23(b)(3)

### 1.    Rule 23(b)(3)

Plaintiff seeks certification of a Settlement Class under Rule 23(b)(3).  Analysis under Rule 23(b)(3) requires the Court to assess both the questions of whether common questions of

law or fact predominate over individual questions, and whether the class action device is superior to other available methods for fairly and efficiently adjudicating the controversy. *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 392-93 (D. Mass. 2011).

### a.    Predominance

Rule 23(b)(3) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778 (3d ed. 2011).

"Common issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria-thus rendering unnecessary an evidentiary hearing on each claim." *Smilow*, 323 F.3d at 40.  "Where ... common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." *Otte ex rel. Estate of Reynolds v. Life Ins. Co. of N. Am.*, 275 F.R.D. 50, 58 (D. Mass. 2011) (applying *Smilow*). Common questions may predominate despite the existence of individual differences, as long as "a sufficient constellation of common issues binds class members together." *Waste Mgmt. Holdings,* 208 F.3d at 296.

Common questions predominate here.  With respect to liability, the overriding common question is whether TimberTech Decks have a common defect that causes, among other things,

scorching and fading.  This central liability question can be answered on a common basis for the Settlement Class as a matter of law.  The common answer that this query yields, if litigated, would have an overwhelming effect on the resolution of Settlement Class Members' claims.

**b.    Superiority**

The superiority requirement is met here as well.  A class action is the superior method of resolving large scale claims if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Amchem*, 521 U.S. at 615.  Four factors are considered in determining whether a class action is superior to individual litigation: (1) whether individuals have a strong interest in controlling potentially separate actions; (2) a class action's effect on competing litigation involving members of the class; (3) whether resolution of the case in a single forum is desirable; and (4) the potential difficulties that management of a class action presents.  Fed. R. Civ. P. 23(b)(3).

The superiority considerations augur in favor of certification.  Certification allows "the plaintiffs to pool claims which would be uneconomical to litigate individually."  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  It is neither economically feasible, nor judicially efficient, for the many thousands of Settlement Class Members to pursue their claims against Defendants on an individual basis.  *See Smilow*, 323 F.3d at 41 ("The core purpose of Rule 23(b)(3) certification is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation."); *Grace v. Perception Tech., Inc.*, 128 F.R.D. 165, 171 (D. Mass. 1989); *Randle v. SpecTran*, 129 F.R.D. 386 (D. Mass. 1988).

Finally, the difficulties of managing a class action are vitiated by the fact of this Settlement Agreement.  When "confronted with a request for settlement-only class certification,

- 17 -

a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

## VII.  THE PROPOSED NOTICE SATISFIES THE REQUIREMENTS OF FED. R. CIV. P. 23.

### A.    Legal Standard For Approval Of A Notice Plan

"The court must direct notice in a reasonable manner to all Settlement Class Members who would be bound by the [settlement] proposal." Fed. R. Civ. P. 23(e)(1).  Additionally, notice of certification of a Rule 23(b)(3) class must be given "to all members who can be identified through reasonable effort" and describe "(i) the nature of the action"; (ii) "the definition of the class certified"; (iii) "the class claims, issues, or defenses"; (iv) "that a class member may enter an appearance through an attorney if the member so desires"; (v) "that the court will exclude from the class any member who requests exclusion"; (vi) "the time and manner for requesting exclusion"; and (vii) "the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Here, the Parties have agreed that notice will be administered by a professional claims administrator.  Upon the Court's grant of Preliminary Approval to the Proposed Settlement, the Notice Provider will disseminate notice by individually addressed letters to all known Class Members  for whom TimberTech possesses an address.  Settlement Agreement, Exhibit B at ¶1. In addition, the Notice Provider shall create a website dedicated to the Settlement with a variety of case-related documents including the Settlement Agreement and Release of Claims as well as key court documents.  Settlement Agreement, Exhibit B at ¶2.  The Notice Provider will also publish, within 60 days of Preliminary Approval, a 1/8 page notice concerning the Settlement on four separate dates in *USA Today*.  Settlement Agreement, Exhibit B at ¶3.  A 1/3 page notice will also be published in *This Old House* not later than 60 days after Preliminary Approval. Settlement Agreement, Exhibit B at ¶4.  Finally, Defendants will purchase banner advertisements

- 18 -

for Internet searches of key terms related to the Settlement, and banner advertisements on various websites related to home construction and renovation for an estimated 5,000,000 impressions. Settlement Agreement, Exhibit B at ¶5-6. And the Notice Provider will provide a declaration attesting to the Court that the best notice practicable was provided an that the reach was sufficient to meet the Due Process requirements of Rule 23. Settlement Agreement §F.2. In sum, the notice plan set forth in the Proposed Settlement satisfies the requirements of Rule 23(e)(1).

### B.    The Content Of The Notice Is Appropriate

This notice program complies with Rule 23 and due process because, among other things, it informs the Settlement Class of: (1) the nature of the action; (2) the essential terms of the Proposed Settlement, including the definition of the Settlement Class and claims asserted; (3) the binding effect of a judgment if the Settlement Class Member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that Settlement Class Members may make an appearance through counsel; (5) information regarding the named plaintiff's request for an incentive award and reimbursement of their attorneys' fees and costs; (6) the procedure for submitting Claims to receive settlement benefits; and (7) how to contact Settlement Class Counsel to make inquiries. Fed. R. Civ. P. 23(c)(2)(B). As such, the Court should approve Exhibits A and B to the Proposed Settlement.

### C.    The Manner Of Providing Notice Is Appropriate

Fed. R. Civ. P. 23's notice requirement is satisfied by the proposed multi-faceted notice plan proposed: (i) direct mail notice to all class members for whom TimberTech prossesses an address; (ii) creation of a website with all necessary information; (iii) publication notice in *USA Today* and *This Old House*; and (iv) banner advertisements on search engines and websites related to construction and home renovation. The type of notice proposed here is similar to that

which has been approved by many other courts. *See, e.g., In re Lupron, supra,* 228 F.R.D. at 85 (noting effectiveness of settlement website as means of publication); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003) (finding that publication notice was the best notice practicable and finding it sufficient to comport with Rule 23); *In re Volkswagen and Audi Warranty Extension Litig.*, 273 F.R.D. 349, 354-355 (D. Mass. 2011) (finding combination of mail and publication notice in *USA Today* best notice practicable); *In re Volkswagen*, 2010 WL 3769259, at *5 (D. Mass. September 22, 2010) (same).

## VIII.   CONCLUSION

For the reasons stated above by Plaintiff, the Parties respectfully request that the Court grant the Joint Motion for Preliminary Approval of Class Action Settlement and proceed to schedule the final approval hearing.

Dated:  January 22, 2015                    Respectfully Submitted,

/s/ Matthew E. Miller
Matthew E. Miller (BBO# 559353)
William H. Anderson
CUNEO GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
(202) 789-3960
mmiller@cuneolaw.com
wanderson@cuneolaw.com

Charles J. LaDuca
CUNEO GILBERT & LADUCA, LLP
8120 Woodmont Avenue, Ste. 810
Bethesda, MD 20814
(202) 789-3960
charlesl@cuneolaw.com

Erica C. Mirabella (BBO# 676750)
132 Boylston Street, 5th Floor
Boston, MA 02116
(617) 580-8270
emirabella@gnemlaw.com

Michael A. McShane
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, CA 94106
(415) 568-2555
mmcshane@audetlaw.com

Robert K. Shelquist
LOCKRIDGE GRINDAL NAUEN PLLP
Suite 2200
100 Washington Avenue S
Minneapolis, MN 55401
(612) 339-6900
rkshelquist@locklaw.com

*Attorneys for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 22, 2016, I filed the foregoing with the Clerk of

the Court using the CM/ECF system, which will send notification of such filing to all

counsel registered with that system.

      /s/ Matthew E. Miller

Matthew E. Miller (BBO# 559353)
CUNEO GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
(202) 789-3960
mmiller@cuneolaw.com